OPINION
{¶ 1} Appellant, Douglas Arnold, appeals from the January 16, 2002 judgment entry of the Lake County Court of Common Pleas, in which he was convicted of two counts of corruption of a minor, one count of abduction, labeled as a sexual predator, and sentenced.
 {¶ 2} On August 24, 2001, appellant was secretly indicted by the Lake County Grand Jury on three counts of corruption of a minor, felonies of the fourth degree, in violation of R.C. 2907.04(A), and one count of kidnapping, a felony of the first degree, in violation of R.C.2905.01(A)(4). On September 7, 2001, appellant was arraigned and entered a plea of not guilty. On December 3, 2001, appellant entered a written plea of guilty to two counts of corruption of a minor and one count of abduction, a lesser included offense of kidnapping and a felony of the third degree, in violation of R.C. 2905.02. On January 9, 2002, a sexual predator hearing was held and appellant was found to be a sexual predator. On January 10, 2002, a judgment entry and notice of duties to register as an offender of a sexually oriented offense was filed. On January 16, 2002, a judgment entry of sentence was filed.
 {¶ 3} The facts emanate from the sexual predator hearing: The charges revolve around sexual conduct which occurred between appellant, who was thirty-nine years old, and the victim, who was a thirteen-year-old girl at the time of the offenses. Appellant and the victim had known each other for over one year due to the fact that the victim was a friend of appellant's stepdaughter. Also, the victim's sister dated appellant's son.
 {¶ 4} The foregoing charges stem from two occasions when appellant engaged in sexual conduct with the victim.[1] On the first occasion, September 20, 2000, appellant inserted his finger into the victim's vagina, while on his bed at his home. The second occasion occurred on September 21, 2000, when appellant picked up the victim from her school bus stop at 7:00 a.m., and transported her to the Hidden Valley Park in Madison Township, Ohio, where he engaged in sexual conduct with the victim at the park. Appellant fondled the victim's breast and twice inserted his finger into her vagina. Appellant also took the victim to his sister's and brother's-in-law home, where all four smoked marijuana. Appellant then placed a joint into the victim's cigarette pack, without telling her, and appellant and the victim left the home.
 {¶ 5} Appellant transported the victim back to her school where she missed the first eight class periods of the day. Appellant took the joint, which was not smoked, out of the victim's cigarette pack so that she would not get into any trouble. At that time, appellant also told the victim not to tell anyone that she had spent the day with him.
 {¶ 6} Because the victim's school notified her mother in the morning that she was absent from school, her mother filed a missing juvenile report with the Lake County Sheriff's Office. Witnesses at the victim's bus stop claimed she was last seen entering appellant's van. The Lake County Sheriff's Office began to search for the victim, and the investigation led officials to appellant's home.
 {¶ 7} Appellant was interviewed and claimed that he picked up the victim from her bus stop without parental consent and transported her directly to school. After interviewing appellant, the Lake County Sheriff's Office questioned the victim, who disclosed the sexual conduct at issue. Attempts to locate appellant for another interview were unsuccessful. However, officers spoke with appellant's wife, Marian Arnold, and appellant's stepdaughter, and told them about the investigation. Appellant's stepdaughter disclosed that appellant also had inappropriate sexual conduct with her. In particular, appellant's stepdaughter alleged that appellant raped her on several occasions, the first time in the fall of 1995, when she was eight years old, and the last time occurred in May 1999, when she was twelve years old. Although appellant's stepdaughter told several individuals about the sexual conduct with appellant at or after the time it was occurring, she never formally reported it to the authorities.
 {¶ 8} The next morning, on September 22, 2000, appellant left his home, drove to his brother's home in Ashtabula, Ohio, and signed the title to his van over to his brother. Appellant then walked to the nearby Greyhound Bus Terminal and purchased a one-way ticket to Fort Myers, Florida.
 {¶ 9} In addition to the foregoing allegations, appellant was also being investigated for his possible involvement with Internet child pornography. Appellant was said to have erected a video camera inside his stepdaughter's bedroom and downloaded the video images onto his computer. During a search of appellant's home, officers located a computer/video cable that was wired from appellant's computer to his stepdaughter's bedroom.
 {¶ 10} The trial court sentenced appellant to one year on each of the corruption of a minor charges and four years on the abduction charge, with all sentences to run concurrently, and he was given credit for one hundred and thirty three days time served. Additionally, appellant was labeled as a sexual predator. It is from that judgment that appellant filed a timely notice of appeal on February 14, 2002, and makes the following assignment of error:
 {¶ 11} "The trial court committed reversible error when it labeled [appellant] a sexual predator against the manifest weight of the evidence."
 {¶ 12} Appellant's sole contention is that the trial court erred by labeling him a sexual predator where the evidence presented did not prove by clear and convincing evidence, set forth in R.C. 2950.09(B), that he was likely to commit a sexual offense in the future.
 {¶ 13} The applicable standard of review, under R.C.2950.01(E)(1), defines a sexual predator as "[a] person [who] has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."
 {¶ 14} In making a determination as to whether an offender is a sexual predator, the trial court must look to R.C. 2950.09(B)(3) and consider all relevant factors, including, but not limited to, all of the following:
 {¶ 15} "(a) The offender's or delinquent child's age;
 {¶ 16} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 17} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 18} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 19} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 20} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 21} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 22} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 23} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 24} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 25} These statutory criteria are intended to aid the trial court, which must determine by clear and convincing evidence, whether an offender is likely to commit one or more sexually oriented offenses in the future. Clear and convincing evidence is more than a mere preponderance of the evidence, yet does not rise to the level of evidence beyond a reasonable doubt. Cross v. Ledford (1954), 161 Ohio St. 469,477. Clear and convincing evidence is evidence which "`produces in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" State v. Campbell (2000), 11th Dist. No. 99-L-012, 2000 Ohio App. LEXIS 6092, at 7, quoting Cross, supra, at paragraph three of the syllabus. Thus, "***a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." State v.Schiebel (1990), 55 Ohio St.3d 71, 74, citing Ford v. Osborne (1887),45 Ohio St. 1, paragraph two of the syllabus. Therefore, with respect to the instant case, a determination must be made whether there was sufficient evidence to support the trial court's judgment that appellant is a sexual predator.
 {¶ 26} The Supreme Court of Ohio has indicated that appellate courts use a manifest weight standard to review a trial court's finding that an offender is a sexual predator. State v. Cook (1998),83 Ohio St.3d 404. See, also, State v. Hart (Mar. 24, 2000), 1st Dist. No. C-990541, 2000 Ohio App. LEXIS 1154, at 3. An appellate court's role in a manifest weight inquiry "***is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, `the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Campbell, supra, at 6, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Thus, if the trial court's finding that an offender is a sexual predator is supported by the weight of the evidence, then the court must also have had sufficient evidence before it to satisfy the requisite clear and convincing degree of proof. Therefore, when reviewing questions of weight, an appellate court must determine whether the state appropriately carried its burden of persuasion by engaging in a limited weighing of the evidence. State v. Davis (Dec. 31, 1998), 11th Dist. No. 97-L-246, 1998 Ohio App. LEXIS 6389, at 34.
 {¶ 27} In the case at bar, because appellant was involved in a sexually oriented offense, and pleaded guilty to two counts of corruption of a minor and one count of abduction, the first prong of R.C.2950.01(E)(1) has been met. Therefore, this court must determine the second prong of R.C. 2950.01(E)(1), namely whether appellant is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 28} The trial court relied upon numerous factors under R.C.2950.09(B)(3) in supporting its finding that appellant is a sexual predator. In particular, the trial court found that pursuant to R.C.2950.09(B)(3)(a), appellant was thirty nine years old at the time the offense occurred, a mature age where appellant should have exercised better judgment than to engage in sexual conduct with a minor. Although appellant did not have any prior sexual offense convictions, R.C.2950.09(B)(3)(b) states that an offender's "***prior criminal *** recordregarding all offenses, including, but not limited to, all sexual offenses" should be considered. (Emphasis added.) Thus, it was proper for the trial court to consider appellant's prior criminal record, including theft, domestic violence, probation violations, and passing bad checks, and the fact that appellant was on probation at the time when he committed these sexual offenses. This extensive prior criminal record shows appellant's continuous disregard for the law and supports a likelihood to engage in the future in such offenses.
 {¶ 29} Pursuant to R.C. 2950.09(B)(3)(c), the trial court found that the victim was a thirteen-year-old girl when the offenses occurred. Also, the allegations with respect to appellant's stepdaughter were not taken into account in reference to the involvement of "multiple victims" pursuant to R.C. 2950.09(B)(3)(d), in the trial court's decision in labeling appellant as a sexual predator. Next, the trial court also took into consideration whether appellant "*** used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting," pursuant to R.C. 2950.09(B)(3)(e). Based on the foregoing facts, appellant took the victim to his sister's and brother's-in-law home on September 21, 2000, the second occasion where appellant had sexual conduct with the victim, and permitted her to smoke marijuana. Also, appellant gave the victim another joint, after leaving the home, which he placed in her cigarette pack and later took out before she went to school. However, although the sexual conduct at issue was already completed by this time, appellant's actions may have served as encouragement to impair the victim from resisting any possible future sexual conduct upon her, after they left the home.
 {¶ 30} Pursuant to R.C. 2950.09(B)(3)(g), R.C. 2950.09(B)(3)(j), and according to the psychological evaluation, although appellant is not a psychopath or pedophile, appellant has significant antisocial personality traits, poses a moderate risk to re-offend, and should have no unsupervised activities with female children. Also, the trial court properly found, pursuant to R.C. 2950.09(B)(3)(h), that appellant's conduct constituted a demonstrated pattern of abuse. Based on the foregoing facts, appellant engaged in sexual conduct with the victim on two separate occasions. On the first occasion, appellant inserted his finger into the victim's vagina. On the second occasion, appellant fondled the victim's breast and twice inserted his finger into her vagina. Thus, because appellant's behavior was not a one-time isolated event, appellant's actions manifested a propensity of a pattern of abuse.
 {¶ 31} The trial court also found that appellant "displayed cruelty or made one or more threats of cruelty" toward the victim pursuant to R.C. 2950.09(B)(3)(i). Because appellant caused the victim to miss school without permission from her mother or school authorities and because appellant instructed her not to tell anyone that she had spent the day with him, the trial court determined that this behavior was indicative of cruelty or a threat of cruelty. Although this court may not have found these circumstances to be an express form of cruelty, but better suited to be characterized under R.C. 2950.09(B)(3)(j) as "any additional behavior characteristics," we cannot say the trial court lost its way by so concluding. Thus, considering the factors pursuant to R.C.2950.09(B)(3), the trial court was presented with clear and convincing evidence that appellant is likely to re-offend sexually in the future and properly labeled appellant as a sexual predator.
 {¶ 32} For the foregoing reasons, appellant's assignment of error is not well taken. The judgment of the Lake County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL and ROBERT A. Nader, JJ., concur.
ROBERT A. NADER, J., retired, of the Eleventh Appellate District, sitting by assignment,
[1] Although not reflected in the indictment, the presentence report indicates two additional occasions where appellant engaged in sexual conduct with the victim — June 2000 and September 11, 2000.